**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Long Beach Mortgage Loan Trust 2004-1, Asset-Backed Certificates, Series 2004-1, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 12 C 5225 |
| v. | ) ) | Judge Sara L. Ellis |
| JOSEPH J. CANNON, not personally, but as Successor Trustee under Trust Agreement dated January 1, 1986, and known as the R.K. Realty Trust, and CHICAGO TITLE LAND TRUST COMPANY, as Successor Trustee of Cole Taylor Bank under Trust Agreement dated June 1, 1996, known as Trust 96-4086, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan

Trust 2004-1, Asset-Backed Certificates, Series 2004-1 ("Deutsche Bank") filed an action to

foreclose on a mortgage granted by Frank Larkin to Long Beach Mortgage Company ("Long

Beach") against the property located at 1733 Ellendale Drive, Northbrook, Illinois (the

"Property"). Larkin died in May 2004, and Chicago Title Land Company, as Successor Trustee

of Cole Taylor Bank under Trust Agreement dated June 1, 1996, known as Trust 96-4086 ("Trust

96-4086") is the current record owner of the Property. Joseph J. Cannon, Successor Trustee

under Trust Agreement dated January 1, 1986, and known as the R.K. Realty Trust ("R.K. Realty

Trust") was joined as a defendant because R.K. Realty Trust has a junior mortgage on the

property.[1]  R.K. Realty Trust is the alleged beneficiary of Trust 96-4086.  Deutsche Bank has

moved to dismiss R.K. Realty Trust and Trust 96-4086's Second Amended Affirmative Defenses

and Counterclaims.  Because neither party addressed the standing issue identified in this Court's

September 22, 2014 Opinion and Order granting Deutsche Bank's initial motion to dismiss the

counterclaims, this Court ordered supplemental briefing on the issue [104].  The issue has been

briefed.  For the following reasons, Deutsche Bank's motion to dismiss [100] is granted in part

and denied in part.  R.K. Realty Trust and Trust 96-4086's (collectively, "Defendants/Counter-

Plaintiffs") common law fraud counterclaim may proceed, but because they have not alleged a

consumer nexus, the consumer fraud act claim is dismissed.

## BACKGROUND[2]

On December 31, 2003, Larkin purchased the Property from Joseph C. Cannon, then

Trustee of the R.K. Realty Trust.[3]  He purchased the property for $43,000.00 below fair market

value.  To do so, he granted Long Beach a mortgage to secure a $476,000 loan ("Mortgage" or

"Note and Mortgage").  Larkin also delivered a promissory note to R.K. Realty Trust for

$119,000, which included a second mortgage on the Property.  Long Beach required a concurrent

closing on the second mortgage.  At the closing, Long Beach provided Larkin with a notice that

---

[1] Joseph J. Cannon has not entered an appearance.  An appearance has been entered on behalf of Luis A.
Toledo, who is the current Successor Trustee of the R.K. Realty Trust.

[2] The facts in the background section are taken from the Second Amended Answer, Affirmative Defenses,
and Counterclaim and exhibits attached thereto and are presumed true for the purpose of resolving
Deutsche Bank's motion to dismiss.  *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15,
Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).  A court
normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary
judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).  Where a document is
referenced in the complaint and central to the counterclaims, however, the Court may consider it in ruling
on the motion to dismiss.  *Id.*  The Court may also take judicial notice of matters of public record. *Gen.
Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

[3] While the Amended Complaint lists "Joseph J. Cannon," the Second Amended Answer describes him as
"Joseph C. Cannon."  *Compare* Doc. 25, *with* Doc. 82.  It is unknown whether this is meant to refer to the
same individual.

servicing of his account ("Larkin Loan Account") was being transferred to Washington Mutual Bank, F.A. ("WaMu"). This notice contained an acceleration clause on the lender's option at the sale or transfer of the property.

On January 29, 2004, "in lieu of foreclosure," Larkin conveyed a Quit Claim Deed to the Property to Chicago Title Land Trust Company, successor to Cole Taylor Bank, under Trust Agreement dated June 1, 1987, known as Trust 00-044044 ("Trust 44-044"). Doc. 82 ¶ 17. The Second Amended Answer alleges both that Trust 44-044 acquired by assignment all of Larkin's rights against Deutsche Bank under the Note and Mortgage and that Larkin assigned all his rights under the Note and Mortgage to Trust 44-044 and R.K. Realty Trust jointly and severally. *Compare id.* ¶ 5, *with id.* ¶¶ 11 & 17. Trust 96-4086 acquired title to the premises from Trust 44-044. Trust 96-4086 also acquired by assignment all Larkin's rights against Deutsche Bank under the Note and Mortgage.

Around February 27, 2004, Jerold S. Rawson, counsel for R.K. Realty Trust and Trust 96-4086, discussed Larkin's conveyance of title to Trust 44-044 and the assignment of the Note and Mortgage to Trust 44-044 and R.K. Realty Trust with a Customer Care Department representative for WaMu. Rawson also discussed,

> the sale to Larkin being made for less than value and under time restraints; problems due to potential guarantors of the suggested Mortgage Assumption not being the Successor Trustee of [R.K. Realty Trust] and how the assumption package that was routinely mailed would be applicable, and Rawson was requested to correspond.

*Id.* ¶ 18. On March 17, 2004, Rawson notified WaMu by letter of the transfer of title and requested that the Larkin Loan Account record reflect Trust 44-044 as the owner of the premises and either R.K. Realty Trust or Trust 44-044 as Larkin's successor, with monthly loan statements and notices to be mailed to Rawson at his offices. WaMu did not immediately elect to accelerate

the loan on this notice of transfer of title. In July 2004, Rawson followed up by telephone on the status of the March 17, 2004 letter and was advised that his requested modifications were under review.

Larkin died on May 10, 2004. On August 11, 2004, during litigation between the Larkin family and Rawson, counsel for Larkin's estate terminated any prior grant of authority that Larkin gave Rawson or R.K. Realty Trust in connection with the Larkin Loan Account. Counsel for the estate insisted that Rawson and R.K. Realty Trust not be involved with the Larkin Estate and that the Larkin Estate name be removed from the Note and Mortgage and not appear on any documents, notices, or correspondence in connection with the Property. Counsel for the Larkin Estate corresponded and had telephone conferences with WaMu and Litton Loan Servicing ("Litton"). Deutsche Bank did not file a probate claim against the Larkin Estate.

Meanwhile, the loan fell into default on several occasions. Around April 5, 2005, Rawson spoke to Tammy at WaMu and threatened litigation after the amount of the required monthly loan payment was increased without notice, which led to a default. Tammy informed Rawson that the account was being modified to reflect Trust 44-044 as the owner of the Property and Joseph J. Cannon, as Successor Trustee of R.K. Realty Trust, as the beneficiary, with loan statements and notices to be mailed to Rawson at his offices, but that the account had to be made current with a $7,957.05 payment. At some time prior to January 31, 2006, without notice to R.K. Realty Trust or Rawson, WaMu increased the Larkin Loan Account interest rate and the monthly payment, and began a required escrow of real estate taxes.

Around December 7, 2005, Rawson spoke to Josh, who worked in WaMu's Collection Department. Rawson again threatened litigation and Josh stated that Joseph J. Cannon, as

Successor Trustee of R.K. Realty Trust, would be reflected on the account as Borrower and future loan statements and notices would be mailed to Rawson if the account was kept current.

WaMu sent a notice to the Larkin Estate on December 5, 2005. Rawson spoke and wrote to Josh again around December 23, 2005. In the conversation, Rawson discussed "the need for reconciliation of the Larkin Loan Account" and Josh again represented that Joseph J. Cannon, as Successor Trustee of R.K. Realty Trust, would soon be reflected on the account as Borrower and future loan statements and notices would be mailed to Rawson. *Id.* ¶ 25. Josh also stated that after the modifications were completed, he could discuss the Larkin Loan Account with Rawson.

Rawson's conversations with Josh continued into January 2006 and were followed by additional letters from Rawson to Josh. Rawson continued to threaten litigation and Josh continued to represent that the requested modifications would be made, but a payment in the amount of $11,403.00 would be required before January 31, 2006. In February, when Rawson sought to make a payment at WaMu's Northbrook, Illinois branch, he was told the account name remained the Estate of Frank Larkin, another attorney was listed as the borrower, and therefore the bank representative could not discuss the account with Rawson. Rawson was also told that the loan was being transitioned to Litton, meaning no payment could be accepted at that time.

Rawson then spoke with individuals in Litton's Customer Service Department and was advised that they could not discuss the Larkin Loan Account with him and that it had been given a new loan number. Rawson began corresponding with the Litton Customer Service Department on March 22, 2006. Starting in late April 2006, Rawson had telephone conversations with Linda McKay, an agent on Litton's Customer Assistance Response Team. McKay told Rawson that when he submitted certain requested documents and made monthly payments that Joseph J. Cannon, as Successor Trustee of R.K. Realty Trust, would be added as the borrower on the

account and the loan statements and notices would be mailed to Rawson. Rawson sent written correspondence to McKay in May and August 2006.

On August 29, 2006, Deutsche Bank advised Rawson that it "would not under any circumstances recognize [R.K. Realty Trust and Trust 96-4086] as having any rights independent of the Larkin Estate." *Id.* ¶ 30. "This was unacceptable to [R.K. Realty Trust and Trust 96-4086] because Larkin's Estate insisted that its name be removed from the loan." *Id.* The Second Amended Answer further states: "On information and belief, based upon conversations with [Deutsche Bank's] attorneys, [Deutsche Bank] could not, under any circumstances, regardless of what R.K. [Realty Trust], Trust No. 044-044, Trust 96-4086 or Rawson, could do or could have submitted, modify the name on the Larkin Loan Account." *Id.* ¶ 31.

An action was filed in the Circuit Court of Cook County to foreclose on the Mortgage in 2007, but that action was voluntarily dismissed on September 29, 2010 "at a Plaintiff's status hearing, without notice to R.K. [Realty Trust], while the case was in discovery and before R.K. [Realty Trust] was to file Amended Counterclaims." *Id.* ¶ 33. This action to foreclose on the Mortgage was filed on July 1, 2012.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case. *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." Id.

## ANALYSIS

### I.     Introduction

Deutsche Bank moves to dismiss Defendants/Counter-Plaintiffs' counterclaims for fraudulent misrepresentation (Count III) and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* (Count IV) pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[4]

Defendants/Counter-Plaintiffs claim that Deutsche Bank committed fraud because, between 2004 and 2006, its servicing agents represented that the Larkin Loan Account would be modified to reflect Trust 44-044 as the owner of the Property, Joseph J. Cannon, as Successor Trustee of R.K. Realty Trust, as the beneficiary, the account name changed to Joseph J. Cannon,

---

[4] R.K. Realty Trust and Trust 96-4086 have voluntarily withdrawn counterclaims Counts I and II. *See* Doc. 82 at 10–11.

as Successor Trustee of R.K. Realty Trust, and that loan statements and notices would be sent to Rawson. Deutsche Bank's servicing agents allegedly made these representations while knowing that Deutsche Bank had a policy of not recognizing a party succeeding to a borrower's interests unless in the event of a marriage, divorce, or legal name change or the party assumed all of the borrower's responsibilities. Defendants/Counter-Plaintiffs allege their reliance on these misrepresentations induced them to not refinance the Larkin Loan, not list the Property for sale "while the name of the Estate of Larkin was reflected on the mortgage as Borrower," to continue to make payments on the Mortgage, and to not seek an order of declaratory judgment as to their rights. They also contend that Deutsche Bank engaged in a pattern of mortgage servicing abuse over this same time period that violated ICFA by, among other things, representing that requested changes would be made and the loan servicers would discuss the account with Rawson if it was kept current or if requested documents were submitted. Deutsche Bank argues that these claims fail for a number of reasons, including lack of specificity and actual damages.

In its reply in support of its initial motion to dismiss Defendant/Counter-Plaintiffs' counterclaims, Deutsche Bank first argued that it was unclear who had standing to bring the fraud claims because the June 7, 2007 Blanket Conveyance, Bill of Sale and Assignment ("2007 Conveyance") offered by Defendant/Counter-Plaintiffs in response to the motion to dismiss did not seem to include such claims. This Court tended to agree, but because the issue had not been fully briefed and the counterclaims were lacking otherwise in specificity, issued an Opinion and Order on September 22, 2014 dismissing the counterclaims and advising Defendants/Counter-Plaintiffs that any amended pleading must set forth the party's standing to maintain the fraud claims. *See* Doc. 78. Defendants/Counter-Plaintiffs filed their Second Amended Answer and Counterclaims, which Deutsche Bank moved again to dismiss. The Court then ordered

supplemental briefing on the assignment issue and to clarify which parties held what claims. Doc. 104. Because the Amended Answer alleges that Rawson represented the interests of his clients Defendants/Counter-Plaintiffs during the communications with Deutsche Bank's loan servicers, they have independent standing to assert the common law fraud claim. The Court will analyze this issue in the context of the ICFA claim.

## II.     Motion to Dismiss

### A.     Count III—Fraudulent Misrepresentation

Deutsche Bank moves to dismiss Defendants/Counter-Plaintiffs' fraudulent inducement claim on the basis that misrepresentation of a material fact, intent to defraud, and detrimental reliance are not pleaded with particularity. Deutsche Bank further argues that actual damages are not alleged. Defendants/Counter-Plaintiffs counter that these are fact arguments better suited to summary judgment and that they have sufficiently pleaded this claim. Defendants/Counter-Plaintiffs also argue that Rawson's purpose in contacting the loan servicing agents was to "make sure that the loan could not be called on account of an unauthorized sale" and the damages sought are for loss of the profitable sale of the Property before the real estate market crash. *See* Doc. 102 at 4, 6.

To allege fraudulent misrepresentation under Illinois law, Defendants/Counter-Plaintiffs must plead,

> (1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (alteration in original) (quoting *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166, 396 Ill. App. 3d 842, 336 Ill. Dec. 571 (2009)). These elements must be alleged with particularity—i.e. "the who, what, when, where,

and how" of the fraud—to satisfy the heightened pleading standard for fraud claims. *See id.*

(citation omitted) (internal quotation marks omitted). "Under Illinois law, justifiable reliance

exists when it was reasonable for plaintiff to accept defendant's statements without an

independent inquiry or investigation." *Id.* (citation omitted) (internal quotation marks omitted).

### 1. Material Misrepresentation

Deutsche Bank first argues that Defendants/Counter-Plaintiffs do not plead

misrepresentation because Rawson's letters to the servicers show that any statements about

changing the loan account name are immaterial in that: 1) R.K. Realty Trust did not want to be

named the borrower (and therefore become liable on the Note and Mortgage), 2) Rawson wanted

to receive notices regarding the loan to avoid default and fees, and 3) the loan servicers

attempted to accommodate Rawson by making R.K. Realty Trust and Rawson authorized users

on the loan account and mailing the notices to Rawson.

In support of this argument, Deutsche Bank attacks Defendants/Counter-Plaintiffs'

allegations, comparing them to the Amended Answer Exhibits, to argue that no

misrepresentation occurred because the loan servicers never promised to change the loan account

name. Deutsche Bank points to Rawson's March 17, 2004 letter to WaMu requesting redirection

of the notices and to "have the account name modified so as to reflect my client's interests," *see*

Doc. 82 at Ex. 6, which interests the Amended Answer describes as "reflect[ing] Trust 044-044

as the owner of the premises and either R.K. [Realty Trust] or Trust 044-044 as Larkin's

successor, with monthly Loan Statements and notices mailed to Rawson at his offices." Doc. 82

¶ 18. Deutsche Bank further argues that, in the April 5, 2005 conversation, Tammy at WaMu is

not alleged to have stated the loan account name would change, rather that the loan would be

modified to reflect Trust 44-044 as the owner of the Property and R.K. Realty Trust as the

beneficiary, with Rawson to receive notices. Deutsche Bank challenges Defendants/Counter-Plaintiffs' description of the December 7, 2005 conversation with Josh, stating that although Josh is alleged to have "again" represented that R.K. Realty Trust would be named the borrower on the loan, this is the first time the Amended Answer states any loan servicer made the statement that R.K. Realty Trust would be added as the borrower. Deutsche Bank argues that Rawson's follow-up letter to Josh on December 23, 2005, regarding their conversation of the same day, his January 31, 2006 letter memorializing their January 17, 2006 conversation, and his February 1, 2006 letter do not reflect that Josh stated R.K. Realty Trust would be added as the borrower. Deutsche Bank further challenges Rawson's March 22, 2006 correspondence to Litton, in which he states that WaMu agreed to add R.K. Realty Trust "as the payor in connection with the loan," as not reflecting that WaMu agreed to change the name of the account or add R.K. Realty Trust as the borrower. *See id.* at Ex. 10. Deutsche Bank argues that Rawson's May 23, 2006 letter to Litton shows that, contrary to the allegation that a Litton representative told him in late April 2006 that R.K. Realty Trust would be listed as the borrower, Rawson understood that Litton's records would reflect R.K. Realty Trust as a party making the monthly payments. *Compare id.* ¶ 29, *with id.* at Ex. 11. Deutsche Bank characterizes Rawson's August 11, 2006 letter describing that correspondence as requesting the name on the account be changed to R.K. Realty Trust as trying to "re-write history" and directs the Court's attention to a Litton letter dated May 31, 2006 in which Litton notes Joseph J. Cannon as the Power of Attorney for the Property and Rawson as Joseph J. Cannon's agent, arguing that the Litton letter shows that Litton never promised to change the name on the loan account. Doc. 101 at 7; Doc. 103 at Ex. A.

As the above narrative shows, Deutsche Bank wants the Court to draw inferences from Rawson's correspondence to refute the loan servicers' alleged oral statements and to support its

interpretation of Rawson's intent in contacting WaMu and Litton. Although Deutsche Bank characterizes this inquiry as simply comparing the pleading to exhibits that directly contradict it, *see Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) ("Where those allegations are contradicted by written exhibits that [plaintiff] attached to his amended complaint, however, the exhibits trump the allegations."), it is really asking the Court to make fact decisions concerning Rawson's intent and the content of conversations. This is not appropriate at the motion to dismiss stage. *See Keefe v. Marquette County*, 31 F. App'x 334, 336 (7th Cir. 2002) ("[The District Judge] did not–nor did she have the power to–make factual findings in ruling on that motion to dismiss." (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001))). Defendants/Counter-Plaintiffs have pleaded that loan servicers represented to Rawson that the loan would be modified to include R.K. Realty Trust as, variously, the "beneficiary," "the borrower," "the payor," and "successor" to Larkin on the loan.[5] The Amended Answer is admittedly confusing because these terms are used interchangeably and the legal effect of these various titles is not explained by any party, except cryptically by Rawson as "reflect[ing] my client's interests." *See* Doc. 82 at Ex. 6. But Deutsche Bank's argument that these requests do not amount to an account "name change" is not convincing. Furthermore, fraud may be based on the alleged oral communications in which Defendants/Counter-Plaintiffs claim various representatives told Rawson that his clients would be named as the borrower. *See, e.g.*, *Pardo v. Mecum Auction Inc.*, 77 F. Supp. 3d 703, 708 (N.D. Ill. 2014) (considering fraud claim based on oral statements). Defendants/Counter-Plaintiffs also allege that the loan servicers knew that Deutsche Bank would not recognize a party succeeding to a borrower's interest except in the event of a legal name change, marriage, or divorce, or if the party first assumed all of the

---

[5] The Court makes no factual determination as to the meaning of these various labels.

borrower's responsibilities.  Doc. 82 ¶ 59.  This is sufficient to plead misrepresentation that information on the loan account would be modified per Rawson's requests.  *Wigod*, 673 F.3d at 569 (plaintiff who identified the knowing misrepresentation, with specifics, sufficiently pleaded this element).  And although it appears from the exhibits that the loan servicers complied with the request to have the notices sent to Rawson's offices, because this claim moves forward on other grounds, the Court will not resolve that fact issue here.

Deutsche Bank further argues that changing the name on the account was not material because the R.K. Realty Trust did not want to become liable on the Note and Mortgage by becoming the borrower and Litton complied with Rawson's request to send the notices and to make R.K. Realty Trust and Rawson authorized users on the account.  However, whatever Rawson's actual intentions, Defendants/Counter-Plaintiffs plead that the failure to make these changes resulted in their making payments on the Mortgage, not refinancing the Mortgage, not listing the Property for sale, and not seeking a declaratory order as to their legal rights.[6]  Taking all inferences in Defendants/Counter-Plaintiffs' favor, as we must at this stage, these allegations—especially the payments on the Mortgage—do specify some plausible material harm.  *See RFC/CLC, LLC v. Siemens Info. & Commc'n Network, Inc.*, No. 00 C 0180, 2003 WL 22287362, at *4 (N.D. Ill. Sept. 30, 2003) (representation not material when it "did not inure to [the party's] detriment").  Deutsche Bank's motion to dismiss Defendant/Counter-Plaintiffs' fraud claim on this basis is denied.

### 2.    Intent to Defraud

Deutsche Bank also argues that Defendants/Counter-Plaintiffs do not sufficiently allege that the loan servicers made the representations with any intent to induce Defendants/Counter-

---

[6] The Court expressly makes no factual finding as to whether Defendants/Counter-Plaintiffs could have taken these actions without modifying the borrower name on the Mortgage.  *See* discussion, *infra*.

Plaintiffs to make payments on the Mortgage, not refinance the Mortgage, sell the Property, or seek a declaratory judgment.  Deutsche Bank argues that there is no connection between the name on the Mortgage and the potential sale of the Property or refinance of the Mortgage, and that if Rawson's clients had thought either of those paths were economically worthwhile, they would have taken them, and that Rawson never explained to the servicers that his clients could not sell the Property or refinance without the name change or what exactly he would be seeking in a declaratory judgment.  Therefore, Deutsche Bank reasons, the loan servicers could not have been acting with intent to thwart these activities.  Deutsche Bank further argues that Defendants/Counter-Plaintiffs do not allege that any servicer rejected a payment because of the name on the account and that the loan servicers did not induce Defendants/Counter-Plaintiffs to make payments on the Mortgage because Rawson contacted WaMu specifically to make payments and receive notices to avoid fees and default.

Defendants/Counter-Plaintiffs answer these arguments with the theory that Rawson sought assurances that WaMu would not accelerate the Mortgage due to the transfer of the Property by Larkin and that listing "the Trust" (whether this is R.K. Realty Trust, Trust 96-4086, or Trust 44-044 is not specified) as the borrower would protect it from "having the loan called" and a "sale" (presumably a foreclosure sale of the Property, although the Response leaves open the possibility that this could mean a sale by owner).  *See* Doc. 102 at 4, 5.  However, this acceleration theory is not pleaded in the Amended Answer.  The Amended Answer only mentions acceleration in the context of Rawson's first communication with WaMu around February 27, 2004, and notes that Deutsche Bank did not elect to immediately accelerate the Mortgage when given notice of the transfer of title to Trust 44-044.  Doc. 82 ¶ 18.  A party may not amend its pleadings in response to a motion to dismiss.  *See Pirelli Armstrong Tire Corp.*

*Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("[A] plaintiff may not amend his complaint in his response brief.").  Defendants/Counter-Plaintiffs may not rely on this acceleration theory to defeat a motion to dismiss.

Without further factual development, the Court cannot decide whether the name on the loan had any effect on Defendant/Counter-Plaintiffs' ability to sell the Property, refinance the Larkin Loan, or bring an (unspecified) declaratory judgment.  The Amended Answer does plead, however, that the loan servicers induced Defendants/Counter-Plaintiffs to continue making payments to keep the loan current with the promise that, once those payments were received, the requested modifications would be possible, even though the servicers knew that the requested modifications could not be made as requested.

Defendant/Counter-Plaintiffs' theory is one of promissory fraud based on a scheme to defraud.  *See Wigod*, 673 F.3d at 570 ("Promissory fraud is generally not actionable in Illinois unless the plaintiff also proves that the act was a part of a scheme to defraud." (citation omitted) (internal quotation marks omitted)).  Therefore, they must allege (and ultimately prove) that "at the time the promise was made, the defendant did not intend to fulfill it."  *Id.*  This could include evidence of a pattern of fraudulent statements.  *Id.*  Defendants/Counter-Plaintiffs have pleaded such statements.  And contrary to Deutsche Bank's assertion, the Amended Answer does specifically plead that, in at least one instance, a loan servicer rejected an attempted payment because Rawson and/or the R.K. Realty Trust were not reflected on the Mortgage.  Furthermore, Rawson did initiate contact with WaMu in order to make the payments, but Defendants/Counter-Plaintiffs also plead that he continued to contact the loan servicers and make payments in an effort to secure his desired modifications.  Just because someone begins the relationship that devolves into alleged fraud does not somehow negate the other party's purported bad acts.

Defendants/Counter-Plaintiffs allege the bare bones of a pattern of statements to induce payment on the Mortgage. Therefore, Deutsche Bank's motion to dismiss the fraud claim on this basis is denied.

### 3.    Detrimental Reliance

For the same reasons that Deutsche Bank argues that Defendants/Counter-Plaintiffs did not sufficiently plead intent, they further argue Defendants/Counter-Plaintiffs have not pleaded detrimental reliance. The name on the Mortgage had no effect, according to Deutsche Bank, on Defendants/Counter-Plaintiffs' ability to sell the Property, refinance, or file for declaratory judgment. As discussed above, these assertions require additional factual development and are not appropriate for disposition on a motion to dismiss. Deutsche Bank also argues that Defendants/Counter-Plaintiffs wanted to make payments to keep the loan current so that Deutsche Bank would not foreclose rather than because of any representations about the account name. Whatever discovery will show of Rawson and the trusts' motivations, the Amended Answer sufficiently pleads that payments were made based on representations that, if they were made, the requested modifications would be put into place. Deutsche Bank also argues that because Rawson asked whether the account name would change in his January 31, 2006 and August 11, 2006 letters that he could not have taken any actions in reliance on the name change. With this argument, Deutsche Bank again asks the Court to make inappropriate inferences from the exhibits—that because the March 22, 2006 letter attempts to make payments but does not address the name change, Rawson's clients wanted to make payments despite the account name not having changed. The Court declines to do so. Dismissal is not appropriate on this basis.

### 4. Damages

Finally, Deutsche Bank argues that Defendants/Counter-Plaintiffs have not alleged any actual economic damages from the loan servicers' representations that the Larkin Loan Account would be modified. In response, Defendants/Counter-Plaintiffs assert that the damages alleged are the loss of the profitable sale of the Property in 2004 or at least before August 29, 2006. *See* Doc. 102 at 6; Doc. 82 ¶ 60. Defendants/Counter-Plaintiffs seem to have abandoned any damages claim related to the alleged inability to refinance or seek a declaratory judgment.

For a successful fraud claim, Defendants/Counter-Plaintiffs must plead actual damages that resulted from its reliance on the loan servicers' representations regarding the requested modifications. "Without a contract, only out-of-pocket losses allegedly arising from the fraud are recoverable." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010). Defendants/Counter-Plaintiffs assert the loss of payments on the Mortgage and profit from the sale of the Property totaling over $300,000. The exhibits attached to the Amended Answer detail some of the payments made. Deutsche Bank argues that Defendants/Counter-Plaintiffs were free to sell the Property at any time, that nothing barred them from selling in 2004, and further that it did not accelerate the Mortgage on notice of the transfer of title. Further, Deutsche Bank argues that Defendants/Counter-Plaintiffs do not assert that they were damaged by the acceleration of the Mortgage. However, the Court cannot decide whether Defendants/Counter Plaintiffs could sell the Property at any time based solely on Deutsche Bank's representations in briefing. Defendants/Counter-Plaintiffs have alleged out-of-pocket damages sufficient for their common law fraud claim to proceed.

Deutsche Bank's motion to dismiss Count III (fraudulent misrepresentation) is denied.

**B.    Count IV—ICFA**

Deutsche Bank seeks dismissal of Defendants/Counter-Plaintiffs' ICFA claim on the grounds that: 1) R.K. Realty Trust and Trust 44-044 have not alleged facts to support that they are consumers within the meaning of the statute, 2) no "consumer nexus" is alleged, and 3) these claims, if true, are isolated misstatements that do not implicate trade or commerce. Defendants/Counter-Plaintiffs assert that one need not be a consumer to sue under ICFA, but in any event "the Trust" (the Court understands "Trust" to mean R.K. Realty Trust) is a consumer within the statute and R.K. Realty Trust is not a business, but "an equitable surrogate for its beneficiary." Doc. 102 at 6. Finally, Defendants/Counter-Plaintiffs assert that there is no evidence these were isolated misstatements and the consumer nexus is shown because Deutsche Bank and its loan agents are mortgage servicers.

Defendants/Counter-Plaintiffs assert that Deutsche Bank's "mortgage servicing abuse" practices were both unfair and deceptive, *see* Doc. 82 ¶ 66, therefore the Court must analyze the Amended Answer using both the deceptive conduct standard and the unfair practices standard. *See Bartucci v. Wells Fargo Bank N.A.*, No. 14 CV 5302, 2015 WL 6955482, at *4 (N.D. Ill. Nov. 10, 2015) ("The correct legal standard for a motion to discuss under an ICFA claim differs for claims alleging deceptive conduct and claims alleging unfair conduct."). To state a claim for deceptive practices, Defendants/Counter-Plaintiffs must allege:

> (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.

*Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160, 201 Ill. 2d 134, 267 Ill. Dec. 14 (2002). Such claims are subject to the higher Rule 9(b) pleading requirement. *Bartucci*, 2015 WL 6955482, at *5. Unfair conduct claims are analyzed using the Rule 8(a) notice pleading standard and require

a plaintiff to allege, although not in these precise words, that the practice: (1) offends public policy, (2) is "immoral, unethical, oppressive, or unscrupulous," and (3) "causes substantial injury to consumers." *Id.*

The Illinois courts and courts in this Circuit interpret ICFA to apply both to consumers, under § 505/1(e) ("any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household") and to non-consumers under § 505/10a ("[a]ny person who suffers actual damage as a result of a violation of [ICFA] committed by any other person") using the "consumer nexus test." *See Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (explaining, ICFA "does not protect just consumers, but any person," and noting, "courts have, it is true, glossed this provision to require that the fraud be of sufficient magnitude to be likely to affect the market generally"); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 911 (N.D. Ill. 2012) (collecting cases). The consumer nexus test requires that a plaintiff plead:

> (1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers.

*Thrasher-Lyon*, 861 F. Supp. 2d at 912 (alterations omitted) (citation omitted) (internal quotation marks omitted).

Deutsche Bank first challenges R.K. Realty Trust and Trust 44-044's standing as consumers as related to the Mortgage, arguing both that the trusts are not consumers within the meaning of ICFA and that there are no allegations of any contract, sale, or purchase between Deutsche Bank and Defendants/Counter-Plaintiffs. Defendants/Counter-Plaintiffs argue that services qualify as merchandise under the terms of the statute so as to make them consumers. However, that does not address the fact that the Amended Answer is based on allegations of two

trusts (or maybe just one) who were third parties to a mortgage wishing to pay the Mortgage and assume some (or perhaps all) responsibilities under the Mortgage without a formal assumption agreement. Thus based on the allegations, Defendants/Counter-Plaintiffs cannot be consumers because there was no contract. Any further analysis of whether an Illinois land trust can qualify as a consumer under ICFA, a question the Parties have not sufficiently briefed, or whether a consumer fraud claim is something that can be passed to these trusts through the various assignment documents tendered by Defendants/Counter-Plaintiffs, is immaterial.

As for whether Defendants/Counter-Plaintiffs can proceed as non-consumers, they have not alleged a consumer nexus beyond simply stating that "this was a pattern of mortgage servicing abuse." Doc. 82 ¶ 67. This is not sufficient even under notice pleading standards to show that the specific actions alleged were "directed to the market generally" or "involved consumer protection concerns." *Thrasher-Lyon*, 861 F. Supp. 2d at 912 (finding no consumer nexus when plaintiff failed to allege how the defendants' "actions or representations concerned consumers other than Plaintiff or how their actions involved consumer protection"). Without this consumer nexus, Defendants/Counter-Plaintiffs cannot proceed on a deceptive practices or an unfair conduct ICFA claim as non-consumers. *Id.* (because plaintiff, a non-consumer, failed to allege a consumer nexus, she did not have standing to pursue an ICFA claim).

Deutsche Bank's motion to dismiss Defendant/Counter-Plaintiffs' ICFA claim is granted.

**CONCLUSION**

Deutsche Bank's motion to dismiss Defendant/Counter-Plaintiffs' affirmative defenses and counterclaims [100] is granted in part and denied in part. The ICFA counterclaim, Claim IV, is dismissed. The fraud counterclaim, Claim III, may proceed.

Dated: January 19, 2016

SARA L. ELLIS
United States District Judge